Radosevich v. Berryhill is on for argument next. Mr. Schultz. May it please the Court, Your Honors, Barry Schultz on behalf of the appellant Heidi Radosevich. Administrative Law Judge aired by assigning great weight to the opinion of state agency psychologist Dr. Snyder, but then failing without explanation to incorporate a key limitation set forth by Dr. Snyder in his report. The ALJ also aired... Mr. Schultz, let me tell you what my principal question is about. The psychologist talked about tasks with one or two steps. The question posed to the vocational expert talked about simple tasks. The question I have is how do we know whether those are the same or different? You're just assuming that they're different because the verbal formulation is different. But don't we need to know how a vocational expert understands the phrase simple tasks? Possibly, except referring to this Court's opinion in Terry v. Astrew. I'm not worried about opinions. I'm worried about how vocational experts understand a phrase like simple tasks. Was there any question posed to the vocational expert along the lines of what do you understand by the phrase simple tasks? No, there was not. It would have been really simple at the hearing to find out whether the vocational expert took that phrase to be the same thing as tasks with one or two steps. I don't know how we assume on appeal where that line was never pursued at the hearing that the vocational expert understood them differently. I think the plaintiff's position is that because Dr. Snyder both said a limitation to simple repetitive one to two step tasks, that that's something that the ALJ was required to say. I know they used different words, but I'm trying to figure out how we know whether there was a substantive difference if the vocational expert took the phrase simple tasks to be the same as tasks with only one or two steps. There was no difference at all. And it would have been so simple. It would have been a task with only one step. To ask the vocational expert that question, you're asking us to assume on appeal that the vocational expert saw a difference without laying a basis in the record. Except that the jobs that the vocational expert gave are jobs which the Dictionary of Occupational Titles describes as having more than one to two step tasks. So it seems the vocational expert must not have interpreted it that way or he wouldn't have found that Ms. Radasevich could perform those jobs because they require greater ability. In addition, the ALJ found that Ms. Radasevich was moderately limited in her ability of concentration, persistence, or pace. But then the ALJ in the residual functional capacity finding only found limitation to simple, routine, repetitive work and did not include any limitations in concentration, persistence, or pace in the finding. This Court has held now in probably nine or ten different opinions that a default to simple, routine, repetitive work is insufficient, at least without some explanation for some additional language which incorporates limitations in concentration, persistence, or pace. Specifically in the O'Connor-Spinner case, the first O'Connor-Spinner case, the Court noted that the ability to stick with a task over time is different from the ability to learn the task. And in this case, the consultative examiner, psychologist, Dr. Krawliak, he really made that distinction. He said that the claimant cognitively was capable of performing simple, routine work. But he also said because of her depression and anxiety, she would have difficulty maintaining pace or she would be off task, she would be distracted. So those are two different concepts. And here, having found the moderate limitations in concentration, persistence, or pace, the ALJ should have, was required to include those limitations both in the residual functional capacity assessment and in the hypothetical question to the vocational expert. And failing to do that, remand is warranted. And then finally, the ALJ's subjective complaint analysis, what the Commissioner Forum would call the credibility analysis, should be reversed because the ALJ made significant unsupported findings and unsupported inferences in reaching his conclusions. This is not a situation where there's maybe one or two minor things that the ALJ got wrong in assessing the subjective complaints. I believe that plaintiffs set forth eight different specific findings or discussions by the ALJ that were not supported in the record. As a few examples, one is the ALJ relied on the claimant's failing to quit smoking when her doctor suggested that she do so. But in reaching that conclusion, the ALJ cites two specific treatment notes in the record. The one is the record at 1,116, where the claimant was encouraged to quit smoking because apparently there's a four-fold increase in the chance of having a stroke for someone who suffers from migraine headaches who also smokes. So there was no advising to quit because it would help her current symptoms, only to prevent a future problem, which does not undermine the claimant's credibility as to the severity of her symptoms. And in fact, Ms. Rodasiewicz was a nurse practitioner at that point, that she has such severe withdrawal when she tries to quit smoking that she becomes belligerent and irritable. And given that, per the ALJ, she has a severe anxiety and severe depression, she's just apparently not always capable of quitting smoking. In addition, at page 1,126 of the record, with Dr. Tamela, the doctor advised her to quit, but said, because her anxiety is so high at this time, I would not advise that she try to quit now. So the ALJ relying on the failure to heed the doctor's advice is not supported in this record. The ALJ also found that there's a lack of muscle atrophy, and that if Ms. Rodasiewicz's pain were as severe as she alleged, she would experience muscle atrophy. But there's no medical evidence supporting that position. No doctor said that. The ALJ didn't cite any medical treatise, and he just made an improper medical finding on that basis. Similarly, the ALJ said that, in terms of the claimant saying she only sleeps four hours a night, the ALJ says, well, she sleeps during the day, and so maybe that's why she has problems sleeping at night. Again, there's no basis in the record for that finding. And if the claimant is lying down during the day because of her pain and fatigue, then she may, and even if that causes her inability to sleep at night, it's a vicious cycle. It's not something she can help or something that undermines her credibility. And then plaintiff in a brief raises other similar issues. And on these bases, we request that this court reverse the decision of the ALJ. Thank you. Certainly, counsel. Mr. Truitt. Eric Truitt, Your Honor, on behalf of the commissioner. With regards to the appellant's mental impairments, the commissioner's position is that the RFC finding, residual functional capacity finding, is supported by the opinion of Dr. Snyder, who is the agency's psychological consultant at the reconsideration level. I have the same question for you as I had for Mr. Schultz. That is, how can we tell what the vocational expert understood by the phrase simple tasks? My understanding of it is that... I'm not asking for your understanding. I'm asking how we can tell in this record what the vocational expert's understanding was. We don't know for sure how the vocational expert understood simple, but we do know that the ALJ, in context, viewed simple in one to two steps. Did the ALJ afford everyone an opportunity to ask the vocational expert a question like, what do you understand by simple tasks? Yes. And that does bring up a recurrent issue that we see, is that these opinions... As you know, the Supreme Court is hearing this term, a question along the lines of, how do vocational experts know what they know? And how are their beliefs questioned? So it's important to be clear in this case, I think, whether there was any obstacle to finding out what the vocational expert understood and how he knew what he knew. And I don't see any barrier to cross-examination in this case. I also... If memory serves me correct, the claimant's non-attorney representative submitted a post-hearing briefing addressing a number of vocational issues, such as the methodology to determine job numbers. But I'm not aware of any... Taking the position that somehow one- to two-step tasks meant something materially different than simple tasks. And I think if you look at Dr. Snyder's opinion, it's found on page 112 of the administrative record. In context, it's reasonable to think that one- to two-step tasks and simple tasks are... They're essentially the same thing, because... I must say, I have no idea. Simple tasks may be a code phrase for a vocational expert or may not be. I just don't know. Is there some vocational expert manual that we could look at to see what it is supposed to mean to them? I mean, the dictionary of occupational titles, I don't think there's a definition of simple. The agency defines unskilled work in 404.15.68, but it doesn't provide a specific definition of simple. You know, it says unskilled work... You know, I'll be clear. One thing I worry about in a case like this is that vocational experts have some kind of private jargon, and that it may not at all be the same as what the psychologist was talking about. Or it may be the same. Now, if everybody agrees that there was an opportunity to find this out from the vocational expert, we may just have an undeveloped record. But both sides seem to be asking us to know, without any basis in the record, what the vocational expert understood by this phrase. And I don't know how we know that unless there is either something in the record or some definition in a regulation or some book where we could go look it up. I'm not aware of an explicit definition of the term simple. I would say, however, with the substantial evidence standard, you don't necessarily need to know exactly to affirm the commissioner's decision. You'd simply have to think that it would be reasonable on this record to draw that conclusion, even if there's an ambiguity or uncertainty. On the procedural side of things, I do think that the claimant was given full and fair opportunity to... If there was a concern somehow that simple was a misunderstood or somehow different than the term one- or two-step test, there certainly was full opportunity in both the hearing and in the post-hearing submissions to develop that point. And the fact that the claimant didn't do so would suggest that this is sort of, after the fact, trying to gin up something that everyone at the time seemed to think were roughly the same. The Dictionary of Occupational Titles classifies jobs at different levels and defines those classifications, right? Light work, et cetera, and also defines the level of reasoning that's required for different classifications and different jobs. Is that not correct? I mean, it does include the general educational development levels, but those aren't... So, for example, if you're talking about a job where it lists the strength requirements and how much you need to handle, those are precise requirements of the job, whereas the general educational development are simply the level of education either gained formally or informally through work that you'd roughly expect a person to have doing that job. So unlike the exertional and non-exertional requirements listed in the DOT and the companion publication, the GED levels do not describe specifics. So I know for... I know some of the jobs that have reading levels, you'd be expected to have, like, you know, have read 1,000 novels or something like that. Obviously, to work in some of these jobs, you don't need to be able to read 1,000 novels. And I think that was addressed in the case that Mr. Schultz cited, the Terry v. Estrue 2008 case from this court. But the GED levels are not specific job requirements of every position. They're simply describing the educational development you'd expect the person to have at that level of work. But apart from educational levels, the Dictionary of Occupational Titles does rank jobs according to reasoning level. That's a separate category, right? That's part of GED. So it would be GED reasoning level. So that's all part of the general educational development. There's language, math, and reasoning. But not key to having a credential of some kind? No, no, it's simply... It's key to ability. The explanation in the DOT is sort of the level of development you would expect the person to have gained through formal or informal education. Okay. But again, this, you know, there are... In context, you know, Dr. Snyder is contrasting complex with one- to two-step tasks. And given that the ALJ is given a certain amount of deference or leeway in terms of interpreting the record, it's certainly not unreasonable to equate one- to two-step tasks with simple tasks. Mr. Truitt, can you respond to the point that your adversary makes, in particular with respect to Dr. Snyder, that he observed that the claimant, you know, against moderate restrictions in concentration, persistence, or pace, made the observation as a medical matter, but never came back to it in the RFC determination? Well, a couple things about that. First, and this is laid out more in the brief, the term moderate was understood to mean fair or adequate. So that observation in itself does not mean that the claimant would have substandard ability. And then second, if you look on page 112 of the record, the form that was completed has a section called MRFC Additional Explanation. This is what used to be called Section 3 of the form. It's where the consultant provides a narrative explanation of what the claimant can still do despite those limitations noted earlier. And if you look at that first sentence, it says the claimant's ability to sustain concentration and carry out routine repetitive tasks of one to two steps would be intact. So you have a narrative explanation saying, yes, I checked a few boxes here, but my bottom line conclusion is that she still has adequate or sufficient ability to carry out this level of work. So this court in Varga and Johansen and other cases has said if the consultant explains what he or she means in that narrative section, then the ALJ can rely on that as long as it's consistent with the earlier findings. If there are no more questions, I would ask that the court affirm the judgment of the district court and the commissioner's decision. Thank you, Mr. Truitt. Anything further, Mr. Schultz? First, I believe that the commissioner is incorrect and the Dictionary of Occupational Titles does say that every job has a reasoning level that a person has to be able to maintain. So if you can only engage in one to two-step tasks, those are only reasoning level one jobs. None of the jobs found by the ALJ in this case are reasoning level one jobs. In addition, again, I believe the commissioner is wrong in that if you look at page 112 of the record, Dr. Snyder's opinion, where it says MRFCA additional explanation, it does not say that that's a narrative of the doctor's final opinion or a summary of his opinion. It's an additional explanation, meaning that the opinions prior to that, which included multiple moderate limitations, including limitations with pace, are also part of the doctor's opinion. And finally, it's the commissioner's burden of proof at step five. I thought your point was a little different than that. I thought your point was it may be one thing if she can sustain her concentration at a level to perform a one- or two-step task, but that doesn't mean that she may have the concentration, persistence, or pace to work an eight-hour shift. Correct. I thought that was your point. Yes. Okay. Yes, that is the point, and both Dr. Krawiak and Dr. Snyder gave opinions that there were such pace limitations. Thank you, Your Honor. Thank you very much. The case is taken under advisement.